# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KEITH A. DEROKEY | * | CIVIL ACTION NO. 18-4942 |
| | * | |
| | * | SECTION: "I"(1) |
| VERSUS | * | |
| | * | JUDGE LANCE M. AFRICK |
| HAZA FOODS OF LOUISIANA, LLC, ET AL. | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

## ORDER AND REASONS

On September 12, 2018, the Court held oral argument on Plaintiff Keith A. Derokey's Motion to Compel (Rec. Doc. 20). The Court ruled on most of the issues raised at that time, but ordered the Defendants to produce a privilege log and took under submission the issue of whether the documents to be listed thereon had been properly withheld. As to the documents on the privilege log, the Motion to Compel is granted in part and denied in part.[1] The following documents are not protected by the work product doctrine and shall be produced by October 17, 2018: the documents listed in the Haza Foods Claim Notes category and dated 4/19/17, 4/21/17, 5/18/17, and 7/31/17, and the documents listed in the "miscellaneous" category and dated 5/18/17 (between Paulin and Lagrue), 4/21/17, 4/19/17, 4/14/17, and 4/13/17. All remaining documents listed on the privilege log are protected by the work product doctrine and shall not be subject to discovery.

## Background

In this lawsuit, Keith A. Derokey alleges that he slipped and fell on water that was on the floor in the men's restroom at a Wendy's restaurant in Gretna, Louisiana. The Wendy's was owned and operated by defendant Haza Foods of Louisiana, LLC ("Haza"). Mr. Derokey alleges that

---

[1] This ruling resolves all issues remaining in the Motion to Compel (Rec. Doc. 20).

1

Haza knew or should have known that allowing water on the floor of the restroom would present an unreasonable risk of harm to Mr. Derokey and that Haza failed to exercise reasonable care to remedy the dangerous condition. As a result of the fall, Mr. Derokey alleges he suffered injuries to his right hand, wrist, and shoulder. He has joined Haza and its insurer, Travelers Property and Casualty Company ("Travelers"), as defendants.

The last issue before the Court in the pending Motion to Compel is whether Defendants have properly withheld certain documents as privileged. Initially, the Defendants relied on a blanket assertion that Travelers' claim file notes and Haza's internal claim investigation notes were protected by the work product doctrine. These documents were implicated by Derokey's discovery requests for accident reports, incident reports, emails, correspondence, or other documents created by the Defendants. As noted above, the Court ordered the Defendants to prepare a privilege log so that the privileged nature of the documents could be determined.[2] The privilege log groups the documents into three categories.

The first group lists a series of notes from the Travelers' claims file, as early as six days following the incident. According to one of the earliest notes in the claims file,[3] there were "red flags on this one." The privilege log includes a detailed description of each record. From the log, it is discernible, for example, that on August 28, 2017, Derokey notified Travelers that he had retained counsel. Some of the entries indicate cursory notes, for example "[a]ttempted conversation with plaintiff" on April 21, 2017 and "[v]oicemail left for Kirk Derokey" on August 3, 2017. Others reflect investigation of the claim, approval of reserves, and assessment of damages.

---

[2] Equal Employment Opportunity Comm'n v. BDO USA, L.L.P., 856 F.3d 356, 363 (5th Cir. 2017), as revised (May 8, 2017). ("Blanket claims of privilege, generalized descriptions of a document, and conclusory statements that a document is privileged are not sufficient to prove a privilege claim.")

[3] In their supplemental memorandum, the Defendants produced the first three notes in the claims file, all dated April 17, 2017. The other two notes are administrative notes reflecting the claim's assignment.

The second group of documents in the privilege log are Haza Foods' Claim Notes, which has eight entries. The earliest of these is dated April 19, 2017 (two days after the claim was reported to Travelers), and states "[r]ecap of information still needed." The next entry reports an attempted phone call with Derokey on April 21, 2017. According to the log, the next document, dated May 18, 2017 contains information provided to Patty Paulin "regarding actions taken after plaintiff's fall and information provided by an unnamed manager and plaintiff." The next document is dated July 31, 2017 and contains "[i]nformation regarding the incident and [Paulin's] impression of this information." Two entries dated October and November 2017 refer to reprinting the Travelers' claim file. A third appears to reference a conversation with a Travelers' claims agent who sought additional information in February 2018. The document dated December 11, 2017, contains a general description of the injuries and Haza's estimated settlement value.

The third group of documents in the privilege log is described as "miscellaneous" and includes seven emails within Travelers or between Travelers and Haza in April, May, and December, of 2017 and March of 2018. It also includes four emails between Haza employees in April and May 2017, which appear to contain requests for information about the claim and "[g]eneral facts of the claim as understood by Charlene Lagrue," who was the district manager at the time of the incident. This group of documents also includes a claim acknowledgement form and a bodily injury worksheet.

Law and Analysis

1. *Work Product Doctrine*

In considering whether the documents are protected by the work product doctrine, the Court must determine whether the documents were prepared in anticipation of litigation. Fed. R. Civ. Proc. 26(b)(3); United States v. Nobles, 422 U.S. 225, 238 (1975). Even if a document is,

though, it may be ordered produced if the seeking party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. Proc. 26(b)(3)(A). In ordering such production, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. Proc. 26(b)(3)(B).

"[M]aterials assembled in the ordinary course of business," are excluded from work-product materials. El Paso, 682 F.2d at 542.

> Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted). "However, the fact that a defendant anticipates litigation resulting from an incident does not automatically insulate investigative reports from discovery as work-product." Carroll v. Praxair, Inc., No. 2:05CV00307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006). "[T]he burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect the documents from discovery." Piatkowski, 2000 WL 1145825, at *2.

For example, in Carroll, the defendant argued that written statements, notes of interviews, and incident investigative reports regarding the accident at issue in the lawsuit were protected by the work product doctrine. 2006 WL 1793656, at *1. The accident in question involved the plaintiff truck driver who was found unconscious while unloading liquid nitrogen. Id. The defendant

4

company presented an affidavit asserting that an investigation team was formed within 24 hours of the incident by the company's legal department to address the causes of the accident in anticipation of litigation and claims of liability against the company. Id. at *3. The plaintiff countered that the investigation had been conducted in the ordinary course of business and submitted deposition testimony substantiating that investigations are routinely done following any accident and that certain changes in operations were made as a result of the root cause analysis. Id. The court found the company failed to establish that the primary motivating factor behind the investigation and the root cause analysis was to aid in possible future litigation, noting that although the legal department had been involved, there was no evidence to indicate whether all post-accident investigations are conducted by the legal department or whether there was a particular reason why this incident resulted in the legal department's involvement. Id. at *4. The court added that the root cause analysis contained information that the company would be expected to compile in the ordinary course of business. Id. The court ordered production of the root cause analysis, the incident report, and written statements from the company's employees. Id.

"In the realm of insurance claims and litigation, the analysis of whether documents were prepared in anticipation of litigation becomes more complicated. This is primarily because insurance companies are in the business of conducting, investigating and evaluating claims against its policies." Kansas City S. Ry. Co. v. Nichols Const. Co., No. CIV.A. 05-1182, 2007 WL 2127820, at *3 (E.D. La. July 25, 2007). Thus, courts generally maintain a "fact specific" inquiry into "whether a given item of discovery was produced in anticipation of litigation" Id. (quoting S.D. Warren Co. v. E. Elec. Corp., 201 F.R.D. 280, 283 (D. Me. 2001)). "In making this fact-specific inquiry, courts consider the primary motivating purpose behind the creation of the

document, more so than the timing of production of that document." Houston Cas. Co. v. Supreme Towing Co., No. CV 10-3367, 2012 WL 13055045, at *3 (E.D. La. Sept. 17, 2012).

Plaintiff has cited Piatkowski v. Abdon Callais Offshore, L.L.C. several times for its statement that "courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000). Unlike the present case, where claims file notes are at issue, Piatkowski involved production of witness statements that had been taken by an outside company hired to investigate the accident.[4] 2000 WL 1145825, at *3. Thus, Piatkowski is of limited guidance here. Moreover, of the two cases cited by the court in Piatkowski for its conclusion about the discoverability of insurance company investigation documents, the only reported decision is a case out of Georgia where the documents at issue were sought by an insured (the plaintiff) from the insurer (the defendant) in a lawsuit where the insured challenged the insurer's denial of the claim on the insurance policy. Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co., 61 F.R.D. 115, 118 (N.D. Ga. 1972). That situation clearly differs from the present, where the injured party seeks to obtain the claims file notes of the insurer of the alleged tortfeasor.[5] Thus, the court finds that although Piatkowski seems to announce a general rule, here,

---

[4] The court in Piatkowski deduced that the investigating company "provides services similar to that of an insurance company; it adjusts claims and resolves disputes short of litigation." Id. Following up on this analogy, the court explained that "courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." Id. at *2. The court then concluded that the defendant had failed to demonstrate that "the primary motivating purpose in securing the witness statements was in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resolvable claim." Id.

[5] Indeed, the court in Atlanta Coca-Cola distinguished the facts before it from another case where documents reflecting the insurance claims agent's mental impressions were held protected from discovery because in that case, the evaluation was made by a railroad's insurer following an accident in determining the strength of the case for litigation. 61 F.R.D. 115, 118 citing (S. Ry. Co. v. Lanham, 403 F.2d 119, 131–32 (5th Cir. 1968)). Interestingly, the Lanham case distinguished by Atlanta-Coca-Cola is out of the Fifth Circuit Court of Appeals. Although Lanham applied a prior version of the Federal Rules of Civil Procedure that required a showing of "good cause" to obtain work product documents, it is notable that the court of appeals equated the claims agent's mental impressions to those of the attorney, holding that "those portions of the documents reflecting the mental processes and impressions of claim agents or investigators should be conditioned upon a strong showing of 'necessity or justification,' 'hardship or injustice' similar

6

it is more appropriate to engage in a fact specific inquiry as to whether the documents at issue were prepared in anticipation of litigation.

2. *Haza and Travelers' Privilege Log*

The court finds that the Travelers Claim Notes were prepared in anticipation of litigation. It is not common business practice to report every incident of injury on the premises to one's insurer; it is rarer still for the insurance company to launch a full scale investigation of its own upon receipt of such a report. Here, however, as Defendants point out, at the time Haza reported the claim, it noted the claim had "red flags." Defendants explain that these red flags included that the incident was not witnessed or caught on video, that they found the circumstance of falling on a wet floor sign suspicious, that Derokey claimed that he heard a Haza employee state there was a leaking pipe, and that Derokey was claiming multiple injuries from a slip-and-fall. The claim file notes at issue indicate the claim was being investigated, that coverage was being considered, and that reserves were approved within a month of the claim being reported. The Court finds that, under the circumstances, Travelers' involvement was not part of the ordinary course of business for Haza, but was instead an action undertaken in anticipation of litigation. Thus, the Travelers' Claim Notes are protected by the work product doctrine. Further, Derokey has failed to demonstrate that he has a substantial need for the documents listed on the privilege log. Accordingly, as to the Travelers' Claim Notes, the Motion to Compel is denied.

In contrast, the Court finds that some of the Haza Foods Claim Notes are discoverable. The first four entries dated 4/19/17, 4/21/17, 5/18/17, and 7/31/17, reflect Haza's internal investigation of the incident. There is no reason to believe that the internal investigation would not have been conducted in the ordinary course of business if litigation had not been anticipated. The remaining

---

to that required to overcome the qualified immunity from discovery conferred upon the work product of an attorney under Hickman v. Taylor." S. Ry. Co. v. Lanham, 403 F.2d 119, 131–32 (5th Cir. 1968).

7

documents listed in the Haza Foods Claim Notes section of the privilege log are, however, privileged. First, each of these entries was made after Derokey had retained counsel. Further, three of the documents involve Travelers file and claim information, which, as discussed above, have been found protected by the work product doctrine. The fourth document dated December 11, 2017, indicates it includes a description of injuries and estimated settlement value, which also suggests anticipation of litigation. As to the Haza Foods Claim Notes, the entries dated 4/19/17, 4/21/17, 5/18/17, and 7/31/17 shall be produced by October 17, 2018. The remaining entries in this group are protected by the work product doctrine. Derokey has not shown a substantial need for these remaining entries. Accordingly, they are not discoverable.

The final "miscellaneous" category of documents on the privilege log are also protected in part and discoverable in part. The emails between Haza employees during April and May 2017 are discoverable for the same reason as Haza's internal investigation file notes are discoverable. The description of each email indicates that it is a request for information about the facts of the claim, or a description of the facts as understood by the sender of the email. There is no reason to believe that such investigation would not have been conducted if litigation had not been anticipated. Thus, the entries dated 5/18/17 (between Paulin and Lagrue), 4/21/17, 4/19/17, 4/14/17, and 4/13/17, shall be produced by October 17, 2018.[6] The remaining entries in the miscellaneous group are protected by the work product doctrine. They each reflect communications with or analysis (as in the case of the Bodily Injury Worksheet) by Travelers, which was investigating the claim in anticipation of litigation. Most of these entries reflect discussion of settlement authority, evaluation of damages, and assessment of liability. These topics further indicate that the documents were created in anticipation of litigation. Accordingly, the court finds these remaining items in the

---

[6] In fact, Defendants' privilege log notes that for the emails dated 4/21/17, 4/19/17, and 4/14/17 no privilege attaches and yet still refused to produce them.

miscellaneous category are protected by the work product doctrine. Derokey has not shown a substantial need for such documents and they are, therefore, protected from discovery.

Conclusion

For the foregoing reasons, as to the remaining issues in the Motion to Compel, the motion is granted in part and denied in part. The following documents are not protected by the work product doctrine and shall be produced by October 17, 2018: The documents listed in the Haza Foods Claim Notes category and dated 4/19/17, 4/21/17, 5/18/17, and 7/31/17, and the documents listed in the "miscellaneous" category and dated 5/18/17 (between Paulin and Lagrue), 4/21/17, 4/19/17, 4/14/17, and 4/13/17. All remaining documents listed on the privilege log are protected by the work product doctrine and shall not be subject to discovery.

New Orleans, Louisiana, this 12th day of October, 2018.

_____
Janis van Meerveld
United States Magistrate Judge