ALEXIS DALTON                                              August 30, 2018

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CIVIL ACTION NO. 18-4942

SECTION: "I (1)"

KIRK A. DEROKEY

VERSUS

HAZA FOODS OF LOUISIANA, LLC
AND TRAVELERS INSURANCE COMPANY

DEPOSITION OF ALEXIS DALTON taken on Thursday, August 30, 2018, at The Law Offices of Leake & Andersson, 1100 Poydras Street, Suite 1700, New Orleans, Louisiana  70163.

REPORTED BY:

PATRICIA O. ENGLISH

CERTIFIED COURT REPORTER

JOHNS, PENDLETON, FAIRBANKS AND FREESE                     504 219-1993

```
 1    APPEARANCES:

 2
      REPRESENTING THE PLAINTIFF, KIRK A. DEROKEY:
 3
      LEBLANC FANTACI VILLIO, LLC
 4    BY:  DEBORAH A. VILLIO, ESQ.
      3421 North Causeway Boulevard
 5    Suite 201
      Metairie, Louisiana   70002
 6

 7
      REPRESENTING THE DEFENDANTS, HAZA FOODS OF
 8    LOUISIANA, LLC AND TRAVELERS PROPERTY CASUALTY
      COMPANY OF AMERICA:
 9
      LEAKE & ANDERSSON, LLP
10    BY:  DEAN M. ARRUEBARRENA, ESQ.
      1100 Poydras Street
11    Suite 1700
      New Orleans, Louisiana   70163
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ALEXIS DALTON                                          August 30, 2018

                                                                    21

```
 1         Q.   So, how many pictures -- because I
 2   haven't seen any pictures -- how many pictures
 3   did you take of the men's bathroom on that
 4   day?
 5         A.   One or two.
 6         Q.   Okay.  And you forwarded those
 7   photographs to Charlene Lagrue on that day?
 8         A.   Yes.
 9         Q.   Is that correct?  With the incident
10   report.  Is that my understanding?
11         A.   Yes.
12         Q.   Did you forward the photographs to
13   her before you completed the incident report
14   or after you completed the incident report?
15         A.   I'm not sure.
16         Q.   Are you aware of whether anyone else
17   working for you on that day or working at the
18   store took any photographs?
19         A.   No, I'm not aware.
20         Q.   Do you recall a white female -- the
21   name of a white female who was working for you
22   on that day?
23         A.   Um, we did have one white female
24   that worked for us.
25         Q.   And do you remember her name?
```

JOHNS, PENDLETON, FAIRBANKS AND FREESE                   504 219-1993

1   to wring the mop so that it's not sopping wet,
2   if you will?
3       A.   Yes, we have a wringer.
4       Q.   Do you know whether or not that
5   wringer stays on the bucket and is used at all
6   times?
7       A.   Yes, it stays on the bucket.
8       Q.   It stays on the bucket.  So, is it
9   physically attached to the bucket?
10      A.   It can come off, but it stays on the
11  top all the time.
12      Q.   Do you know, on April 11th, 2017,
13  whether the wringer was on the bucket or off
14  of the bucket?
15      A.   It's always usually on the bucket,
16  but I can't tell you that that day.
17      Q.   Now, after Mr. Derokey's fall you
18  indicated that you checked the bathroom, as I
19  understand you, and you also indicated that
20  you prepared the incident report that you
21  forwarded to Ms. Lagrue.  Is that correct?
22      A.   Yes.
23      Q.   And you stated that Samantha McGee
24  was at the store that day.  She was the
25  manager under you; is that correct?

ALEXIS DALTON                                      August 30, 2018

                                                               56

1    employees that day about what had occurred?

2         A.    No.

3         Q.    Or what had been reported?

4         A.    No.

5         Q.    Since that day, have you talked to

6    anyone about what occurred and/or what you

7    remember that day?  Any other crew members,

8    anyone?  And I'm not asking you what you

9    talked about with your lawyer.  I'm asking

10   you about anyone else:  Your boss, your

11   supervisor, crew members.  Have you discussed

12   what occurred that day with anyone other than

13   your attorney and other than the incident

14   report you forwarded to Ms. Lagrue?

15        A.    No.

16        Q.    No discussions whatsoever?

17        A.    No.

18        Q.    What about with anybody with the

19   insurance company?  Did anybody talk to you

20   about what you knew went on that day?

21        A.    No.

22        Q.    So, the only reporting you did was

23   the incident report to Ms. Lagrue?

24        A.    Yes.

25        Q.    I'm going to show you what we'll

ALEXIS DALTON                                           August 30, 2018

57

1    mark as Exhibit No. 1 and ask you if this is
2    that incident report that you're referring
3    to?  Is that what it looks like?
4         A.   Yes.
5         Q.   And is this the only report you
6    completed at any time?
7         A.   Yes.
8         Q.   And did anyone ask you to write any
9    statements or anything after this report?
10        A.   No.
11        Q.   And no one talked to you about it
12   other than this report?  You sent the report
13   and that was it?
14        A.   Yes.
15        Q.   And in the report you note that,
16   "Customer claims it was slip in (sic) fall.
17   GM Alexis Dalton claims the customer said he
18   slipped over the wet floor sign."
19             Is that what you typed?
20        A.   Yeah.  That's what Samantha told me
21   happened.
22        Q.   So, when you're typing what Samantha
23   told you happened, you type yourself in what's
24   known as the third party?  You write, "GM
25   Alexis Dalton claims the customer said"...

JOHNS, PENDLETON, FAIRBANKS AND FREESE                  504 219-1993

1    report that was sent out.  Did you also send a
2    separate e-mail, or was the incident report
3    something that was electronically sent?
4         A.   Electronically sent.
5         Q.   Just so I'm clear, was any separate
6    e-mail sent to Charlene Lagrue or anyone else
7    with Wendy's in connection with this
8    incident?
9         A.   Um, Charlene and Patty, um -- I
10   forgot the lady's last name.  But, that's the
11   ladies that the claim goes to both of them.
12        Q.   I understand.  Make sure you answer
13   my question.  Was any separate e-mail sent to
14   Charlene Lagrue about this incident?
15        A.   No.
16        Q.   Was any separate e-mail sent to
17   Patty or anyone else regarding this incident?
18        A.   No.
19        Q.   The only thing you sent
20   electronically was the incident report form?
21        A.   Yes.
22        Q.   Which is done online and then you
23   click a button and it gets submitted; right?
24        A.   Yes.
25        Q.   I understand that these 15-minute